Felicidad C. **Boddy**,
Plaintiff/Appellant,
Cross-Appellee,

v.

Jesus S. Leon **Guerrero**, Eugenia A. Leon Guerrero, Mike Naholowaa, and Ana Naholowaa,
Defendants/Appellees,
Cross-Appellants.
Appeal Nos. 96-012 & 96-021
(Consolidated)
Civil Action No. 93-0245
Order upon Rehearing
October 31, 1997

PER CURIAM:

¶1    The court issued its opinion on September 17, 1997, reversing the findings of the jury with respect to fraud.

Plaintiff, Felicidad C. Boddy ("Felicidad"), filed a petition for rehearing with a request for a new panel on October 1, 1997. The petition asserts that the court has made egregious errors in its opinion by not reading the law and by ignoring the facts proven at trial. In addition, Felicidad asserts that the court has ignored the black letter law applicable to this case and its conclusions are wrong. However, the most outrageous aspect of this court's opinion, according to Felicidad, is that the court has elevated the standard of proof for land fraud in the CNMI. The court assumes that Felicidad intends to say that the court has overlooked and misapprehended with particularity certain points of law and fact.[1]

¶2    Felicidad asserts that Justice Atalig should recuse himself in this case because he is John Manglona's second cousin. In addition, Felicidad asserts that both Justice Atalig and Special Judge Juan Lizama should recuse themselves because they are defending against allegations of fraud in another case, and to their benefit, the court in this case has elevated the standard of proof for land fraud in the CNMI. The defendants, Mike and Ana Naholowaa, filed their answer opposing the petition on October 20, 1997.

### SUMMARY OF THE FACTS

¶3    In December 1987, Felicidad wanted to sell her land for $250,000 and asked Mike to find her a buyer. Mike

---

[1] "The petition shall state with particularity the points of law or fact in which in the opinion of the petitioner the Court has overlooked or misapprehended and shall contain such argument in support of the petition as the petitioner desires to present." Com. R. App. P. 40(a).

117

told Felicidad that her land was not worth $250,000 and the Japanese project in the area would not get off the ground. When Mike made that statement, he did not know what the actual value of the land was and he believed that it was not worth $250,000. Mike's statement that the land was not worth $250,000 was not made in the form of an opinion but was made in the form of statement of fact. Felicidad then asked Mike to find her a buyer for $50,000. Jesus Leon Guerrero was willing to pay $50,000 for the land but could not purchase the land because he was not a person of Northern Marianas descent. Therefore, Ana, a person of Northern Marianas descent, purchased the land from Felicidad for $50,000.

¶4 Five years later, Felicidad sued Mike for fraudulent misrepresentation. After the suit was filed, the land was appraised. The appraiser concluded that in 1987 the land had two sets of values, one based on "local purchasing power" and the other on "foreign purchasing power." Under the local purchasing power, the value of land would have been between $40,000 and $80,000. Under the foreign purchasing power, the value of land would have been between $140,000 and $260,000.[2]

## DISCUSSION

### A. Relationship Between Justice Atalig and Attorney John Manglona.

¶5 ██ Felicidad asserts that Justice Atalig should be disqualified from sitting on this appeal because he and John Manglona are second cousins, citing 1 CMC § 3308(b)(5)(ii). This section requires a recusal of a justice if his or her relationship with an attorney in the case is within the second degree, not second cousin. The relationship between second cousins is within the sixth degree. Therefore, such relationship does not constitute a basis for recusal.

### B. Whether the Court Has Elevated the Standard of Proof.

¶6 Felicidad asserts that because the court did not discuss whether Mike made his statement recklessly, it has eliminated that element of fraud as applied in the CNMI. The court discussed only the issue of whether Mike knew what the value of the land was based on Felicidad's complaint and her theory of her case. As the court quoted in its opinion, the complaint alleged that Mike's representations that the land was not worth $250,000 and that projects proposed for developments on Rota would not occur were false and Mike "knew the representations

were false when he made them." Opinion at 4.

¶7 However, the opinion did set forth all the six elements of fraud as given in the jury instructions, including reckless misrepresentation. *Id.* at 5. Simply because the court did not discuss this element does not mean that it has been eliminated as an essential element of the law of fraudulent misrepresentation in the CNMI. In light of Felicidad's petition for rehearing, the court has decided to re-examine the issues on appeal and take into consideration the issue of whether the statement was made recklessly, without knowing whether it was true or false.

¶8 ██ This court has previously dealt with the issue of fraudulent misrepresentation. In *Pangelinan v, Itaman,* 4 N.M.I. 114 (1994), we turned to the RESTATEMENT (SECOND) OF TORTS because we have no written or local customary law on fraudulent misrepresentation. In reversing the Superior Court's finding of fraudulent misrepresentation, we applied section 526 of the RESTATEMENT (SECOND) OF TORTS which provides that a misrepresentation is fraudulent if the maker:

> (a) knows or believes that the matter is not as he represents it to be,
> (b) does not have the confidence in the accuracy of his representation that he states or implies, or
> (c) knows that he does not have the basis for his representation that he states or implies.

We also ruled that:

> The trier of fact determines whether fraud has been proved by clear and convincing evidence. That determination would not be reversed on appeal unless it is clearly erroneous. A determination of clear error will be made where the appellate court, reviewing all the evidence, finds support for the finding but is left with a definite and firm conviction that a mistake has been made. (Citations omitted).

*Pangelinan v. Itaman,* 4 N.M.I. 120, n.33 (1994).

¶9 The court did not overrule these principles in its opinion in this case. Therefore, the standard of proof for fraudulent misrepresentation has not been elevated.

### C. Whether Justice Atalig and Special Judge Juan Lizama Should Be Recused Because the Court Has Elevated the Standard of Proof.

¶10 ██ We have explained that the elements of fraud, as set forth in the opinion and in the RESTATEMENT OF TORTS, have not been changed. A plaintiff, in a case for fraudulent misrepresentation, may prove reckless misrepresentation as a basis for fraud and may do so with either direct or circumstantial evidence or both.

---

[2] For a more detailed rendition of the facts, see the court's opinion.

¶11 Since the court has not raised the standard for proving fraud in a manner that would benefit Justice Atalig and Juan Lizama in a separate case, there is no basis for their recusal.[3]

¶12 What Felicidad wants the court to do is to lower the standard so that anyone who is believed to be disinterested and who makes a definite statement that a piece of land is not worth a certain amount, let's say $1,000,000, is liable for fraud, if subsequent appraisal determines that the land is worth $1,000,000. The court declines to adopt a rule that is lower in standard than as contained in the RESTATEMENTS OF LAW. If the court adopts this standard, the court would be flooded with cases alleging fraud.

**D. Whether the Facts of This Case Establish Fraudulent Misrepresentation.**

¶13 ■ We have re-examined the facts of this case and reapplied the law on fraudulent misrepresentation to see if we have overlooked or misapprehended any points of law or fact. We are again of the opinion that no fraud has been established. In order for Mike's representation to constitute fraud, one of three conditions must be shown:

    1. Mike knew or believed that the land was worth $250,000 when he stated that it was not worth that much.

    2. Mike did not have confidence in the accuracy of his representation that the land was not worth $250,000.

    3. Mike knew that he did not have a basis for stating that the land was not worth $250,000.

*See* RESTATEMENT (SECOND) OF TORTS § 526 (1977).

¶14 As to condition number one, there is no clear and convincing evidence that Mike knew or believed that the land was worth $250,000. The evidence supported Mike's belief that the land was not worth $250,000, because none of the other three persons, trying to sell the land for Felicidad, was able to sell it for that amount.

¶15 Comment (e) of section 526 discusses the second condition. It states: "It is enough that being conscious that he has neither knowledge nor belief in the existence of the matter he chooses to assert it as a fact." Applied to this case, this means that Mike, conscious that he had neither knowledge nor belief that the land was not worth $250,000, went ahead and stated it as a fact. The record on appeal does not contain clear and convincing evidence that Mike was conscious that he had neither knowledge nor belief that the land was not worth $250,000, or that the Japanese project would not get off the ground. Had the evidence showed clearly and convincingly that he was conscious of such lack of knowledge or belief, but made

the statements anyway, his representation would have been reckless. Under this condition, "scienter" is not established by clear and convincing evidence.

¶16 Condition number 3 does not apply to the facts of this case. There is no evidence that Mike made his statement based on his personal investigation or from hearsay, or from other sources he believed to be reliable. *See* comment (f), § 526.

¶17 ■ In reviewing the illustrations under § 526 of the RESTATEMENT, we observe one significant difference between the factual scenarios therein and the facts of this case. In those examples, the alleged perpetrators of fraud hold the exclusive knowledge about the matter being represented or misrepresented. Here, the land about which the statement was being made belonged to Felicidad. Felicidad is presumed to know her property including the value thereof.[4] She knew where the land was situated, its proximity to the public utilities, its terrain, type of soil, size and even land transactions in the neighborhood.

¶18 In addition, Felicidad had the absolute authority to set her own price on her property. She could have insisted on the price of $250,000, or she could have lowered it to any amount of her choice. She sold the land to Ana, a local person of Northern Marianas descent, for $50,000. The expert appraiser testified that if the land were to be sold to a local person, the value of the land would have been between $40,000 and $80,000. The land was sold to a local person.

**CONCLUSION**

¶19 For the above reasons, we **DENY** the petition to change our opinion and the request to submit this appeal to a different appellate panel.

---

[3] In any event, the court agrees with Mike's opposing argument that the motion to recuse is untimely.

[4] Note the numerous cases cited in 31A Am.Jur. 2d *Expert and Opinion Evidence* § 337 n. 68 (1989) for the proposition that "an owner of real property, by reason of that ownership, is presumed to have special knowledge as to its value." 31A Am.Jur. 2d *Expert and Opinion Evidence*, § 337. *Lehman v. Hanson Pontiac Co.*, 74 N.W. 2d 305, 309 (1955).